IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DAUNINE RISNER,             )
                                 )
        Plaintiff       )
                                 )
     vs.              )   CASE NO.  2:08 CV 100
                                 )
CITY OF CROWN POINT, INDIANA,  )
LEN HOMOLA and LLOYD ELDRIDGE,  )
                                 )
        Defendants     )

<u>OPINION AND ORDER</u>

This matter is before the court on the Motion for Summary Judgment [DE 30] filed by the defendants, City of Crown Point, Indiana, Len Homola and Lloyd Eldridge, on October 30, 2009; the Motion to Strike Portions of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Supporting Affidavit [DE 42] filed by the defendants on February 11, 2010; and the Motion to Strike Plaintiff's Surreply Brief and Deny Plaintiff's Alternative Motion for Leave to File a Statement of Genuine Issues [DE 45] filed by the defendants on March 3, 2010. For the reasons stated below, the Motion for Summary Judgment [DE 30] is DENIED, the Motion to Strike Portions of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Supporting Affidavit [DE 42] is GRANTED IN PART and DENIED IN PART, and the Motion to Strike Plaintiff's

Surreply Brief and Deny Plaintiff's Alternative Motion for Leave
to File a Statement of Genuine Issues [DE 45] is GRANTED.

<u>Background</u>

On March 30, 2006, the defendant, Lloyd Eldridge, received a
radio dispatch stating that a male wanted an officer present
while he obtained his vehicle. Eldridge learned that Jeremy Dunn
had loaned his car to his girlfriend who was supposed to pick him
up and did not. Dunn found his car parked on a street with the
keys in the ignition. While speaking to Dunn, Eldridge received
another call which was described as a disturbance, and later
characterized in the police report as a possible breaking and
entering. Eldridge was the first to respond to this call, where
he encountered and questioned Richard Dunn, Jeremy's father.
Richard Dunn explained that he had followed the people who
abandoned his son's car to this address, 906 East Clark Street,
Crown Point, Indiana.

Shelley Wilson, a former party to the suit, received a
telephone call stating that someone had broken into her mother's
house. Wilson walked to her mother's house at 906 East Clark
Street, where the defendants, Eldridge and Len Homola, were
responding to the "disturbance" dispatch and questioning Richard
Dunn. When Wilson arrived, an officer advised her not to enter
the house. Wilson did not comply and tried to enter her parents'

house because her children were inside.  Wilson admitted that she
had consumed approximately six to eight beers before arriving,
had taken Lexapro, Trazadone, and Valium in the three hours prior
to the incident, and was argumentative, yelled at the police
officers, and used profanities.

The plaintiff, Daunine Risner, was next to arrive.  She
informed the officers that she was responsible for looking after
her parents' house because they were out of town.  While Risner
was explaining who she was to an officer, an altercation arose
between the officers and Wilson, Risner's sister.  When Wilson
was put on the ground, Risner exclaimed "Oh my God, that's my
sister and she just had hip replacement surgery" and began to
walk towards her sister.  (Affidavit of Richard Dunn, ¶3)  Homola
told Risner to step away from Wilson and that he was going to
arrest Risner if she was not quiet.  At this point, the parties'
accounts of the events differ.

In his deposition, Homola testified that Risner continued to
yell, further inciting Wilson, whom the police were trying to
subdue.  Homola then placed Risner under arrest for disorderly
conduct and asked her to put her hands behind her back.  Risner
refused to put her hands behind her back and jerked away.
Eldridge then assisted Homola, and they were able to gain control
of Risner's right wrist.  Eldridge testified that Risner then

placed her left arm in front of her and against Dunn's truck in
an attempt to prevent the officers from putting the handcuffs on
her.  Homola grabbed Risner by the back of the head to prevent
her from turning around. The officers then were able to gain
control, and Risner was placed under arrest.

An affidavit prepared by Richard Dunn accompanied the
plaintiff's opposition to defendants' motion for summary judgment
and explained the events as follows.  Dunn stated that he ex-
plained the situation regarding Jeremy Dunn's car to the officer.
"It was made clear that the situation was not an attempted
breaking and entering."  (Aff. of Richard Dunn, ¶1)  While the
officers were knocking on the door of the house, Wilson and Dunn
were standing next to Dunn's truck.  Wilson repeatedly said that
she wanted to go in the house, and the police continued to deny
her access.  Wilson then stated that she had a key and turned to
walk towards the house, which led to the altercation between the
officers and Wilson.  After Wilson was thrown down, Risner
informed the officers that Wilson recently had hip surgery, and
one of the officers responded that he did not care.  Risner moved
toward Wilson, who was screaming at the time, to see if she was
injured.  The officers advised Risner to back away, and Risner
complied.  Dunn then claimed that the officer grabbed Risner by
her left arm, put his right forearm into her upper back, spun her

around to face Dunn's truck, and slammed her into the side of the truck.  Another officer had Risner's right arm, and he handcuffed her.  During the course of her arrest, Risner continually said that the officer was hurting her neck and that she had a bad neck.  Dunn's affidavit also stated that "[n]either Shelley Wilson nor Daunine Risner ever posed a threat to the safety of the officers or anyone else" and that in his opinion, "the amount of force utilized was clearly excessive, unnecessary and outra-geous."  (R. Dunn Aff. ¶¶ 10 & 11)

Risner's own account is that after she informed Homola why she was there, he accused her of being drunk, and she offered to take a breathalyzer.  The officer then said he was going to arrest her, and Risner replied "if I'm going to be arrested for checking on my parents house then arrest me." (Dep. of Daunine Risner, p. 31)  Homola then grabbed her by the back of the neck, squeezed and twisted her neck, and slammed her into the vehicle. She contends that she informed the officer that he was hurting her and that she had neck problems.  With the help of Eldridge, she was placed in handcuffs and charged with disorderly conduct and resisting arrest.

Once she was placed in the police car, Risner complained her neck hurt and that she wanted an ambulance.  Risner was trans-ported to St. Anthony Medical Center at her request.  Since her

arrest, Risner underwent a discectomy in March 2007 and a laminectomy with fusion in December 2007.

Risner filed a complaint against the City of Crown Point, Homola, and Eldridge. Her federal claims under 42 U.S.C. §1983 include excessive force by defendants Homola and Eldridge; false arrest and imprisonment by Homola and Eldridge; malicious prosecution by Homola and Eldridge; and failure to instruct, supervise, and control against the City of Crown Point. Risner also invoked the supplemental jurisdiction of the court for her state claims, including assault and battery, false arrest, false imprisonment, and intentional infliction of emotional distress. The defendants moved for summary judgment on all of Risner's federal and state law claims. In Risner's response in opposition to defendants' motion for summary judgment, she included the affidavit of Richard Dunn. Defendants moved to strike statements in Dunn's affidavit and in Risner's response brief. In the defendants' reply brief, they argued that Risner did not file a Statement of Material Issues with her memorandum in opposition to defendants' motion for summary judgment as required by Local Rule 56.1. Risner responded by filing a surreply, or alternatively, a motion for leave to file a statement of material issues. Defendants also moved to strike Risner's surreply or alternative motion for leave to file a Statement of Material Issues.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Company, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); Stephens, 569 F.3d at 786.  A fact is material if it is outcome determinative under applicable law.  There must be evidence on which the jury could reasonably find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Stephens, 569 F.3d at 786; Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles.  Ashman v. Barrows, 438 F.3d 781, 784 (7th Cir. 2006).  Upon review, the court does not evaluate the weight of the evidence, judge the credibility of wit-

nesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. Wheeler, 539 F.3d at 634 (citing Anderson, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold in-
> quiry of determining whether there is the
> need for a trial--whether, in other words,
> there are any genuine factual issues that
> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.
>
> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.

> Anderson, 477 U.S. at 250, 106 S.Ct. at 2511

See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) (setting out the standard for a directed verdict); Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2553; Stephens, 569 F.3d at 786; Argyro-poulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008)(stat-ing that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); Springer v. Durflinger, 518

F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Before addressing the defendants' motion for summary judgment, the court first must determine what issues remain and what evidence it may evaluate by addressing the defendants' motion to strike Risner's surreply and alternative motion for leave to file a Statement of Genuine Issues and the defendants' motion to strike statements in Risner's response brief to the defendants' motion for summary judgment and supporting affidavit.

Local Rule 56.1(b) provides that "[i]n determining the motion for summary judgment, the court will assume the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion."  The defendants argue that because Risner failed to file a Statement of Genuine Issues, the court is to assume that the facts are as the defendants present, so there is no material issue of fact to preclude summary judgment.  Risner responded by filing a surreply or alternatively a motion for leave to file a Statement of Genuine Issues.  The defendants ask that Risner's surreply be stricken because Risner did not seek leave of court to file a surreply and

for her alternative motion for leave to file a Statement of Genuine Issues to be denied because the defendants would not have the opportunity to respond.

Local Rule 7.1(a) permits the filing of an initiating brief, a response, and a reply, but it does not contemplate the filing of a surreply or response to the reply brief. Even if a party raises new issues in its reply, the opposing party is not permitted to submit a surreply absent leave of the court. Cleveland v. Porca, 8 F.3d 289, 297 (7th Cir. 1994). The proper response is a motion to strike or to seek leave from the court to file a response to the reply brief. Id. Because Risner failed to seek leave of court to file her surreply, the defendants' motion to strike Risner's surreply is GRANTED.

Independent of Risner's surreply, the court finds that Risner substantially complied with Local Rule 56.1. Risner attached a Designation of Material Facts in Opposition to Defendants' Motion for Summary Judgment and a Designation of Evidence in Opposition to Defendants' Motion for Summary Judgment with her response. A statement of genuine facts is generally construed to satisfy the requirements of Local Rule 56.1 where it sets forth a different version of the facts, showing that genuine issues remain to be litigated. See Gazarkiewicz v. Town of Kingsford Heights, Indiana, 359 F.3d 933, 947 n.6 (7th Cir. 2004) (relying

on the district court's finding that the "Statement of Material Facts" filed by the plaintiff in opposition to the defendant's motion for summary judgment was to be construed to be the same as the "Statement of Genuine Issues" contemplated by the N.D. Ind. Local Rule 56.1(b)); Morfin v. City of East Chicago, 349 F.3d 989, 998 n.11 (7th Cir. 2003)(overturning a district court decision not to construe a Statement of Material Facts as a Statement of Genuine Issues where the Statement of Material Facts provided a different explanation of the events, showing that a factual dispute remained). Risner's statement of the material facts explains the events differently from the defendants' version, and highlights the issues that remain. This satisfies the requirements of Local Rule 56.1. Because Risner substantially complied with Local Rule 56.1, her alternative motion for leave to file a Statement of Genuine Issues is DENIED AS MOOT.

Next, the defendants have moved to strike statements in Risner's response brief and supporting affidavit. First, the defendants argue that paragraphs one and seven must be stricken from Dunn's affidavit because he lacks personal knowledge. Rule 56(e) requires that an affidavit must be "made on personal knowledge [and] set forth facts as would be admissible in evidence." Drake v. Minnesota Mining and Manufacturing Company, 134 F.3d 878, 886 (7th Cir. 1998). Personal knowledge may con-

sist of what the witness thinks he knows from personal percep-
tion.  Advisory Committee's Note, Federal Rule of Evidence 602.
"What the witness represents as his knowledge must be an impres-
sion derived from the exercise of his own senses."  United States
v. Evans, 484 F.2d 1178, 1181 (2nd Cir. 1973) (quoting 2 Wigmore,
Evidence, 3d ed. 1940, §657). "Inasmuch as summary judgment pro-
cedure lacks safeguards of cross-examination of affiant, it is
important that it be shown that affiant was competent to testify
to matters therein stated and that the facts to which he swears
are admissible under rules of evidence." American Securit Co. v.
Hamilton Glass Co., 254 F.2d 889, 893 (7th Cir. 1958).

Paragraph 1 of Dunn's affidavit provides that "[i]t was made
clear that the situation was not an attempted breaking and
entering."  Despite Risner's position that Dunn's statement meant
that it was clear to him that there was not a breaking and enter-
ing, Dunn's statement implies that he made it clear to another
party, the officers, that there was not an attempted breaking and
entering.  However, Dunn could not know when it was first clear
to the officers that there was not an attempted breaking and
entering.  See Davis v. House of Raeford Farms of Louisiana LLC,
2008 WL 2952477, *1 (W.D. La. 2008) (finding that witness was not
competent to testify to what another knew).  If the affidavit is
construed to mean that Dunn told the officers that the house was

not being burglarized, the officers were not required to rely on Dunn's statement. In fact, the officers continued the investigation by trying to get into the house. Because the officers did not call off the investigation after Dunn's explanation, Dunn cannot state that it was clear to the officers that there was not an attempted breaking and entering. Therefore, Dunn lacks personal knowledge, and the defendants' motion to strike the statement "[i]t was made clear that the situation was not an attempted breaking and entering" from paragraph 1 of Dunn's affidavit is GRANTED.

Paragraph 7 of Dunn's affidavit states that one of the officers was pushing the back of Risner's head. Because Dunn perceived Risner's arrest, he is competent to testify to impressions he derived from witnessing the events. See Evans, 484 F.2d at 1181. Dunn could have seen that force was applied through viewing the struggle between Risner and the officers based on Risner's apparent inability to move, her complaints that the officer was hurting her neck, and the manner in which the officer was handling her.

Furthermore, even if Dunn could not have perceived that the officer was pushing Risner's head, his opinion as a lay witness is admissible. Federal Rule of Evidence 701 admits the opinions of lay witnesses that are rationally related to the events

perceived and helpful to the trier of fact. Because a witness
does not need to have special knowledge to determine if someone
is pushed, Dunn is competent to testify that in his opinion,
based on his perception of the events that took place between
Risner and the officers, Risner was pushed. Accordingly, the
defendants' motion to strike paragraph 7 of Dunn's affidavit is
DENIED.

The defendants also move to strike paragraphs 2 and 3 from
Dunn's affidavit, arguing that they are inadmissible hearsay.
Paragraph 2 provides that Wilson continually said that she wanted
to go into the house and that she informed the officers she had a
key to the house. Paragraph 3 states that one of the officers
said in reply to Risner's concern that her sister had just been
released from the hospital, "I don't give a shit. She's going to
jail." Risner argues that these statements are excluded from the
hearsay rule because they are not offered for the truth of the
matter asserted, they are present sense impressions, and because
the nonmoving party does not have to produce evidence in a form
that would be admissible at trial.

"It is well-settled that statements that are offered for
context, and not for the truth of the matter asserted, are not
hearsay as defined in Rule 801 of the Federal Rules of Evidence."
United States v. Macari, 453 F.3d 926, 941 (7th Cir. 2006).

Wilson's statements that she wanted to go into the house and had keys provide the context for the altercation that arose between Wilson and the officers. And, the officer's statement to Risner provided the context for the events that transpired between Risner and the officers. Without these statements, it would not be clear what ignited the conflicts between the parties. See Id. (finding that where the following events would not make sense if the hearsay statement was excluded, the hearsay statement is being offered for context and not for the truth of the matter asserted); Cooper-Schut v. Visteon Automotive Systems, 361 F.3d 421, 430 (7th Cir. 2004)(admitting statements that were made to the affiant for the effect it had on the listener). Therefore, the statements are not being offered for the truth of the matter asserted and are not hearsay. The defendants' motion to strike paragraphs 2 and 3 is DENIED accordingly.

The defendants next move to strike paragraphs 10 and 11 of Dunn's affidavit on the grounds that they contain both a legal conclusion and the opinion of a lay witness. Paragraph 10 provides that Risner never posed a threat to the safety of the officers and paragraph 11 states that the amount of force utilized was excessive, unnecessary, and outrageous.

Under Risner's §1983 excessive force claim, she bears the burden of establishing that the officers' use of force was

unreasonable in light of the perceived threat to the safety of the officers and others. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Paragraphs 10 and 11 of Dunn's affidavit provide conclusory statements of the facts that Risner must prove. Because an opposing party cannot defeat a motion for summary judgment by supplying conclusory allegations, paragraphs 10 and 11 are stricken from Dunn's affidavit as legal conclusions. See Kirkwood v. DeLong, 683 F.Supp.2d 823, 827 (N.D. Ind. 2010) (stating that conclusory allegations by a party opposing summary judgment cannot defeat a motion for summary judgment).

The defendants also moved to strike several lines from Risner's memorandum in opposition to the defendants' motion for summary judgment. First, page seven of Risner's response provides "In the opinion of the sober, independent witness, Richard Dunn, the force utilized 'in placing these middle aged women under arrest was clearly excessive, unnecessary and outrageous.' (Dunn Aff. ¶ 11)" As discussed above, Dunn cannot testify to a legal conclusion. See Kirkwood, 683 F.Supp.2d at 827. In addition, Risner has not established that Dunn was sober or independent. Therefore, the court strikes this statement as a legal conclusion.

Finally, the defendants moved to strike the following statement from Risner's statement of facts paragraph 52 and page seven of Risner's response brief: "As a result of the force used in effecting their arrests, Shelley Wilson sustained a lacerated spleen and internal bleeding in addition to other injuries." Although an individual may experience physical injuries and emotional problems to which she can testify, she is not qualified to state that her arrest was the proximate cause of her problems and, in effect, offer a self-diagnosis. Starks-Harris v. Taylor, 2009 WL 2970382 (N.D. Ind. 2009). Rather, expert testimony is needed to establish causation when the medical effects are not within the understanding of the average person. Korte v. Exxon-mobil Coal USA, Inc., 164 Fed. Appx. 553, 556 (7th Cir. 2006). The only proof Risner offers to establish the causation of Wilson's injuries is Wilson's deposition testimony. Because Wilson is not qualified to testify to the causation of her injuries, Risner has failed to lay the appropriate foundation to establish the causation of Wilson's injury. For this reason, this statement on page seven of Risner's response brief and paragraph 52 in Risner's statement of the facts are stricken.

Risner raised the following federal claims under 42 U.S.C. §1983 in her Complaint: excessive force by Homola and Eldridge; false arrest and imprisonment by Homola and Eldridge; malicious

prosecution by Homola and Eldridge; and failure to instruct, supervise, and control against the City of Crown Point.  Risner also invoked the supplemental jurisdiction of the court for her state claims against Homola, Eldridge, and the City of Crown Point, including assault and battery, false arrest, false imprisonment, and intentional infliction of emotional distress.  Risner also requested punitive damages on all claims.  Risner concedes that her federal claim for malicious prosecution and state law claims for battery and intentional infliction of emotional distress fail as a matter of law and that there is insufficient evidence to move forward with her §1983 failure to supervise claim.  Furthermore, she agrees that punitive damages are unavailable for her §1983 and state law claims. (Memorandum filed January 14, 2010, p. 8)  The remaining claims include excessive force, false arrest, false imprisonment under §1983, and false arrest under state law.

A §1983 claim for excessive use of force during the course of an arrest, investigatory stop, or other seizure of a citizen is analyzed under the Fourth Amendment reasonableness standard. Graham v. Connor, 490 U.S. at 394, 109 S.Ct. at 1870-71; Holmes v. Village of Hoffman Estates, 511 F.3d 673 (7th Cir. 2007); Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 592 (7th Cir. 1997).  This analysis looks to the totality of the circum-

stances, assessing whether the force used was excessive in light
of the severity of the crime for which the plaintiff was being
arrested, whether the plaintiff posed a threat to the safety of
the officers or to other persons, and whether the plaintiff was
resisting the officers or attempting to flee.  Graham, 490 U.S.
at 396, 109 S.Ct. at 1872; Holmes, 511 F.3d at 673.  See also
Fidler v. City of Indianapolis, 428 F.Supp.2d 857, 862 (S.D. Ind.
2006).  The measure of reasonableness is made "from the perspec-
tive of a reasonable officer on the scene, rather than with the
20/20 vision of hindsight," and pays "careful attention to the
facts and circumstances of each particular case." Graham, 490
U.S. at 396, 109 S.Ct. at 1872.  In determining reasonableness,
the court must account for the fact that police officers often
have to make split-second decisions in tense situations.  Id. at
397.  For this reason, not every push or shove violates the
Fourth Amendment.  Id. at 396.

Taking the facts in the light most favorable to Risner, a
reasonable jury could find that the officers' actions were un-
reasonable.  Risner's deposition and Dunn's affidavit both state
that Risner first informed the officers that her sister had hip
replacement surgery after she saw the altercation between the
officers and her sister.  The officers then told Risner to step
back, and Risner complied.  Risner then asked her sister if she

was okay, and at that point the officer grabbed Risner by her arm, put his right forearm into her upper back, and slammed her into the side of Dunn's truck. The officer continued to push Risner's head into the truck and handcuffed her, even though Risner repeatedly said that her neck hurt and that she had a bad neck. According to Dunn's affidavit and Risner's deposition, Risner did not fight, try to flee, physically resist, or do anything physically threatening to anyone. Rather, Dunn and Risner provide that Risner was compliant with the officers. Nonetheless, the officers forcibly threw Risner onto the truck even though she was not resisting.

"[P]olice officers do not have a right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996). When there is no provocation, even one push can constitute excessive force. Hogue v. City of Fort Wayne, 599 F.Supp.2d 1009, 1030 (N.D. Ind. 2009). It is unreasonable to throw an individual down to handcuff her when the arrestee was not threatening to harm anyone at the scene, was not resisting or evading arrest, was not attempting to flee, and was only charged with minor offenses. See id. (denying summary judgment on §1983 excessive force claims where the facts, as presented by the plaintiff, provided that he did not resist arrest, flee, or

threaten to harm anyone).  Furthermore, Risner's account of the
facts differ from the officers in regards to whether she was
cooperating, attempting to resist arrest, and whether she posed a
risk to safety.  Because the court cannot make credibility
determinations with regards to which account is correct, a
genuine issue of fact remains as to the reasonableness of the
officers' actions.  See Holmes, 511 F.3d at 686; Graham v. Hilde-
brand, 203 Fed. Appx. 726, 730 (7th Cir. 2006).

The defendants contend that even if there is a question of
fact as to the force applied by the officers, the officers are
protected from liability by qualified immunity.  "When confronted
with a claim of qualified immunity, a court must ask first the
following question: 'Taken in the light most favorable to the
party asserting the injury, do the facts alleged show the offi-
cer's conduct violated a constitutional right?'" Brosseau v.
Haugen, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)(quot-
ing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150
L.Ed.2d 272 (2001)).  Second, the court will ask "[w]hether it
would be clear to a reasonable officer that his conduct was
unlawful in the situation confronted."  Saucier, 533 U.S. 201-02,
125 S.Ct. at 2156.  The right allegedly violated must have been
"clearly established" in a "particularized" sense and "[t]he
contours of the right must be sufficiently clear that a reason-

able official would understand that what he is doing violates that right" at the time of the incident. Andersen v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). See also Auriemma v. Rice, 910 F.2d 1449, 1455 (7th Cir. 1990). The court will examine existing case law to determine whether the violation was clearly established so that the officers knew they were violating the law. Viewed as a whole, the doctrine of qualified immunity erects a substantial barrier for plaintiffs, and appropriately so because qualified immunity is "designed to shield from civil immunity 'all but the plainly incompetent or those who knowingly violate the law.'" Kernats v. O'Sullivan, 35 F.3d 1171, 1177 (7th Cir. 1994).

Taking the facts in the light most favorable to Risner, the court must first ask whether the facts as alleged violate Risner's constitutional rights. To review, Risner claims that she was compliant with the officers and did not resist arrest, flee, or do anything else illegal. Taking these facts as true, Risner had a constitutional right under the Fourth Amendment to be free from detention and arrest. See Hogue, 599 F.Supp.2d at 1031 (finding that if the plaintiff's version of the facts were correct and he did not do anything illegal, he had a Fourth Amendment right to be free from detention).

Next, the court inquires into whether the law was clearly established so that the officers knew they were violating the plaintiff's constitutional right. It is "clearly established that 'police officers do not have the right to shove, push, or otherwise assault innocent citizens without any probable cause whatsoever.'" Payne v. Pauley, 337 F.3d 767, 780 (7th Cir. 2003); Hogue, 599 F.Supp.2d at 1030. In Payne, the court found that it is well established that it was unlawful to use tight handcuffs and violently yank arrestees who were not resisting arrest, did not disobey the orders of the police officer, and did not pose a threat to the safety of the officers or others, and were suspected of committing only minor crimes. Payne, 337 F.3d at 780. Again, in Hogue, the court found that the law was sufficiently clear that it was excessive force to use tight handcuffs and throw the arrestee down where he was not attempting to flee or resist arrest, and denied qualified immunity accordingly. Hogue, 599 F.Supp.2d at 1030. Because the facts, as presented by Risner, show that she was not resisting arrest, disobeying an officer, and did not pose a threat to the safety of others, the officers' actions of forcibly throwing her onto Dunn's truck and pushing her head violated the clearly established law that an officer cannot shove or push an innocent citizen absent any provocation. Accordingly, the officers are not entitled to

qualified immunity, and their motion for summary judgment on the issue of excessive force is DENIED.

Next, the defendants move for summary judgment on the §1983 false arrest and false imprisonment claims, asserting that Risner's Fourth Amendment right was not violated because the officers acted with probable cause.  Pursuant to the Fourth Amendment, "a warrantless arrest by a law officer is reasonable . . . where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 153, 125 S.Ct. 588, 593, 160 L.Ed.2d 537 (2004). Probable cause, in turn, exists if "at the time of the arrest, the officers possess knowledge from reasonably trustworthy information that is sufficient to warrant a prudent person in believing that a suspect has committed, or is committing, a crime." United States v. Briet, 429 F.3d 725, 728 (7th Cir. 2005). See also United States v. Parra, 402 F.3d 752, 764 (7th Cir. 2005). Probable cause is based on the "totality of the facts and circumstances known to a reasonable arresting officer . . . . "Nichols v. Town of Cedar Lake, 131 Fed. Appx. 488, 490 (7th Cir. 2005). Consequently, the court evaluates probable cause "on the facts as they would have appeared to a reasonable person in the position of the arresting officer - seeing what he saw, hearing what he heard." Parra, 402 F.3d at 764 (quoting Mahoney v. Kersery, 976

F.2d 1054, 1057 (7th Cir.1992)) (emphasis omitted).  The exis-
tence of probable cause is an absolute defense to any claim under
§1983 against police officers for wrongful arrest, false impri-
sonment, or malicious prosecution.  Mustafa v. City of Chicago,
442 F.3d 544, 547 (7th Cir. 2006).

Risner was charged with resisting law enforcement in viola-
tion of Indiana Code §35-44-3-3 and acting in a disorderly manner
in violation of Indiana Code §35-45-1-3.[1]  The defendants contend
that they had probable cause to arrest Risner because she inter-
fered with the arrest of Wilson, questioned the officers, esca-
lated Wilson's behavior,  failed to follow the officers' orders,
and resisted arrest.  However, Risner's account of the events
substantially differs.  In regards to the resisting law enforce-
ment violation, Risner claims that she did not resist her arrest

---

[1]The Indiana resisting law enforcement statute, 35-44-3-3 provides: A
person who knowingly or intentionally: (1) forcibly resists, obstructs, or
interferes with a law enforcement officer or a person assisting the officer
while the officer is lawfully engaged in the execution of the officers duties;
(2) forcibly resists, obstructs, or interferes with the authorized service or
execution of a civil or criminal process or order of a court; or (3) flees
from a law enforcement officer after the officer has, by visible or audible
means, including operation of the law enforcement officer's siren or emergency
lights, identified himself or herself and ordered the person to stop; commits
resisting law enforcement, a Class A misdemeanor.

And, Indiana's disorderly conduct statute, Ind. Code 35-45-1-3 provides:
A person who recklessly, knowingly, or intentionally: (1) engages in fighting
or in tumultuous conduct; (2) makes unreasonable noise and continues to do so
after being asked to stop; or (3) disrupts a lawful assembly of persons;
commits disorderly conduct, a Class B misdemeanor.  The term tumultuous
conduct as used in this statute means" conduct that results in, or is likely
to result in, serious bodily injury to a person or substantial damage to
property."  Ind. Code 35-45-1-1.

or try to flee but that she was thrown down after asking her sister if she was okay. Furthermore, Risner argues that her only comments were directed at the officers to inform them of her sister's hip replacement surgery and to ask her sister if she was okay. If Risner's account is correct, she was not obstructing or interfering with the officers carrying out their duties because she was not inciting her sister's behavior.

In regards to the disorderly conduct charge, the Fourth Amendment and relevant Indiana statute required the officers to have probable cause to believe that Risner made unreasonable noise and continued to do so after being asked to stop at the time of her arrest. In disorderly conduct cases based on the unreasonableness of the noise, the state must prove that the defendant "produced decibels of sound that were too loud for the circumstances." Whittington v. State, 669 N.E.2d 1363, 1367 (Ind. 1996). Loud noise can be found unreasonable where it agitates witnesses and disrupts police investigations. Id. Speech directed towards the legality and appropriateness of police conduct towards a third party is protected by the Indiana constitution and is an inappropriate basis for a disorderly conduct claim. Shoultz v. State, 735 N.E.2d 818, 826 (Ind. App. 2000).

Risner claims that her only comments were in concern for the officer's treatment of her sister. After she was told to stop talking or that she would be arrested, the only comment Risner alleges to have made was that the officer could go ahead and arrest her. Because the facts differ and it is unclear whether Risner's statement interfered with the officers' ability to control the situation and subdue Wilson, who allegedly was belligerent, or whether her statements were directed toward the police officers' treatment of Risner's sister, there are factual disputes concerning the reasonableness of Risner's statement in light of the circumstances. "[I]f the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir. 1993). See also Llaguno v. Mingey, 763 F.2d 1560, 1565 (7th Cir. 1985) (en banc) (plurality opinion); Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1346-47 (7th Cir.1985). See also Lester v. City of Chicago, 830 F.2d 706, 715 (7th Cir. 1987) (whether police had probable cause to arrest for disorderly conduct is a jury question). Because of the disputed facts and competing reasonable inferences, the probable cause determination concerning Risner's

arrest will be reserved for the jury and the defendants' motion is DENIED on this matter.

Finally, summary judgment is denied on Risner's state law claims of false arrest and false imprisonment. The Indiana Tort Claims Act provides a blanket immunity to government employees acting within the scope of their employment. I.C. §34-13-3-3; §34-13-3-5. However, claims against officers for false arrest and false imprisonment are not protected by the immunity granted by ITCA, so the court must analyze the merits of the claim. I.C. §34-13-3-3-(8).

Indiana law parallels federal law for false arrest and false imprisonment claims. See Garrett v. City of Bloomington, 478 N.E.2d 89 (Ind. App. 1995). Summary judgment is appropriate where the record as a whole reflects the existence of probable cause. Conwell v. Beatty, 667 N.E.2d 768, 775 (Ind. App. 1996). As discussed above, there remains an issue of material fact concerning whether Risner's actions were unreasonable as required by the disorderly conduct and resisting arrest statutes. Therefore, the issue of probable cause must be saved for the jury and the defendants' motion for summary judgment is DENIED.

———————————

Based on the foregoing reasons, the Motion for Summary Judgment [DE 30] filed by the defendants, City of Crown Point,

Indiana, Len Homola and Lloyd Eldridge, on October 30, 2009 is DENIED; the Motion to Strike Portions of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Supporting Affidavit [DE 42] filed by the defendants on February 11, 2010 is GRANTED IN PART and DENIED IN PART; and the Motion to Strike Plaintiff's Surreply Brief and Deny Plaintiff's Alternative Motion for Leave to File a Statement of Genuine Issues [DE 45] filed by the defendants on March 3, 2010 is GRANTED.

ENTERED this 21st day of September, 2010


                         s/ ANDREW P. RODOVICH
                            United States Magistrate Judge